BORDER ET AL. *v.* GROOMS ET AL.

[No. 120, September Term, 1972.]

*Decided November 29, 1972.*

*Motion for rehearing filed December 22, 1972; denied December 29, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Marvin I. Singer* and *Lee C. Barnett,* with whom were *Robert L. Sullivan, Jr.,* and *Sullivan, Wiesand & Singer* on the brief, for appellants.

*John F. Somerville, Jr.,* for appellees.

MURPHY, C. J., delivered the opinion of the Court.

This appeal involves an eighty-four acre tract of land in Allegany County, located approximately six miles west of Cumberland at the intersection of Vocke and Winchester Roads in LaVale, Maryland. The LaVale Zoning Board, on appellants' petition, changed the zoning classification of the property from Residential A and Rural Residential to Commercial A, thereby making possible the proposed construction of an enclosed shopping mall of approximately 500,000 square feet, accommodating over fifty stores.[1] The Board's decision was premised on its finding, made after an evidentiary hearing, that there had been a substantial change in the character of the neighborhood since the original zoning in 1957. Appellees

---

1. Zoning was introduced in LaVale in 1957 and is governed by Code of Public Local Laws of Allegany County (Everstine, 1963) §§ 356-361, as amended.

—property owners residing in the area of the subject property—appealed to the Circuit Court for Allegany County. That court (Getty, J.) concluded that the rezoning was not justified because no legally sufficient evidence to establish a change in the character of the neighborhood had been adduced before the Board. The court reversed the Board's decision and this appeal followed.

## I

Appellants contend that Judge Getty erred in denying their Motion Ne Recipiatur to exclude appellees' appeal to the Circuit Court for Allegany County, filed on the ground that appellees had failed to serve a copy of their Petition of Appeal upon the LaVale Zoning Board as required by Maryland Rule B2 e, which provides:

> "The appellant shall join with his order for appeal, or shall file with the clerk of the court, within ten days after filing the order, a petition setting forth the action appealed from, the error committed by the agency in taking such action, and the relief sought, *and shall serve a copy thereof on the agency.*" (Emphasis supplied.)

The record discloses that by letter dated March 3, 1972, addressed to the Board's office, appellees' counsel notified the Board that its decision of February 14, 1972 granting the requested reclassification would be appealed to the Circuit Court for Allegany County. Appellees thereafter filed both their order and petition of appeal in the Circuit Court on March 6, 1972; the certificate of service appended to the order and petition of appeal specified that copies thereof had been mailed to Leslie Clark, attorney for the Board, on March 3, 1972 at his designated office address (not the address of the Board). It was Clark's testimony that he did not receive either the order or petition of appeal. Other testimony in the record from the secretary to counsel for appellees was to the effect that she typed both the order and petition of appeal and personally mailed a copy of each on March 3, 1972

in the same envelope to the Board's counsel at his office address. The secretary testified that she particularly remembered these events because her employer advised her of the importance and necessity of complying with the various notices required by the law. There was other evidence in the case showing that on March 16, 1972 the Board's counsel notified all parties that the appeal had been filed.

In denying appellants' Motion Ne Recipiatur, Judge Getty held, in effect, that personal service upon the Board of the petition of appeal was not required; that the appellees had filed their petition of appeal with the Circuit Court and certified that a copy had been served on the agency by service upon its counsel; and that the mailing of a copy of the petition to the Board's counsel constituted "substantial compliance" with the provisions of the Rule.

Implicit in Judge Getty's opinion is his conclusion that the petition of appeal was in fact properly mailed to the Board's counsel. Under Maryland law, such a finding raises a presumption that the petition "reached its destination at the regular time and was received by the person to whom it was addressed." *Kolker v. Biggs*, 203 Md. 137, 144, 99 A. 2d 743, 746 (1953). See also *Mohr v. Universal C.I.T. Credit Corp.*, 216 Md. 197, 140 A. 2d 49 (1958) ; *McFerren v. Goldsmith-Stern Co.*, 137 Md. 573, 113 A. 107 (1921). Clark's testimony that he did not receive a copy of the petition did not, of course, conclusively rebut the presumption of its receipt; rather, it was merely evidence for the trier of fact to consider, together with the other evidence in the case, in determining whether a copy of the petition had been mailed to Clark, as specified in the certificate of service, and received by him. On the record before us, we cannot say that the balance struck by Judge Getty was erroneous.

Appellants urge that even if a copy of the petition was served upon the Board's counsel, the appeal to the Circuit Court nevertheless should have been dismissed

under Maryland Rule B5 [2] because Maryland Rule B2 e requires that a copy of the petition be served "on the agency" and service thereof upon counsel for the agency does not constitute compliance with the Rule. Rule B5 mandates dismissal of an appeal where the appellant "shall fail to file" either the order or petition of appeal "within the time prescribed" by the Rules, "unless cause to the contrary be shown." In *Volk v. Pugatch,* 262 Md. 80, 277 A. 2d 17 (1971), we approved the granting of a motion to dismiss where the appellant completely failed to file the petition of appeal required by Rule B2 e and also failed to transmit the record and testimony, as required by Rule B7 a. In *Salisbury Board of Zoning Appeals v. Bounds,* 240 Md. 547, 214 A. 2d 810 (1965), we reversed the lower court's ruling refusing to dismiss an appeal where the appellants failed to file a petition of appeal setting forth the error committed by the agency until thirty days beyond the time prescribed for such filing by Rule B2 e. Both *Volk* and *Bounds* involved failure to file a petition of appeal complying with the requirements of Rule B2 e; in each case, we noted that the Rule did not require a showing of prejudice to the adverse party as a prerequisite to dismissal of the appeal. In *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966), the petition was timely filed but failed to expressly allege that appellants were persons aggrieved by the Board's order. We there held, in refusing to approve a dismissal of the appeal, that "[w]here there is compliance with the substance of the requirements of statutes or rules and the other parties have not been prejudiced, technical irregularities cannot be made the basis for depriving persons of the opportunity to assert their legal rights." 245 Md. at 61, 225 A. 2d

---

2. "Rule B5. Dismissal of Appeal.
   "If the appellant shall fail to file his order for appeal within the time prescribed by Rule B4 (Time for Filing) or any order issued pursuant thereto, or shall fail to file his petition within the time prescribed by section e of Rule B2 (How Appeal Taken), the court shall dismiss the appeal unless cause to the contrary be shown."

at 299-300. In *Board of County Commissioners v. Kines,* 239 Md. 119, 210 A. 2d 367 (1965), it was claimed that the appeal was subject to dismissal because a copy of the *order* of appeal had not been served on the agency prior to its filing with the Clerk of the lower court, as required by Rule B2 c. After noting that the agency received a copy of the *petition* of appeal before the expiration of the time for appeal, and therefore had "full and timely notice" that its action was sought to be overturned, we ruled that there was "substantial compliance with the appeal procedures." 239 Md. at 125, 210 A. 2d at 371.

Appellees in the present case did not "fail to file" their order and petition of appeal "within the time prescribed" by the Rules; on the contrary, the order and petition were both filed with the Clerk of the lower court well within the time prescribed by Rule B2. The content of the petition of appeal fully complied with the requirements of Rule B2 e; indeed, a review of the petition shows that it sets forth, in extended detail, as required by the Rule, "the action appealed from, the error committed by the agency in taking such action, and the relief sought." Three days prior to filing their order and petition of appeal, appellees notified the Board by letter sent to its office that an appeal would be taken from its decision granting the requested reclassification. The Board's counsel, who had appeared on its behalf at the zoning hearing, and upon whom a copy of the petition of appeal had been timely served, thereafter notified all other parties on March 16, 1972—ten days after the petition was filed—that an appeal had been taken. It may be presumed that in affording such notification, as required by Rule B2 d, counsel was acting on the Board's behalf. Plainly, therefore, this is not a case where the agency's failure to receive a copy of the petition of appeal kept˘it in darkness; clearly, it had full and timely notice that its decision had been appealed and thus the real purpose of Rule B2 e was satisfied. In these particular circumstances, the lack of any prejudice being manifest, the failure of the

appellees to serve a copy of their timely filed petition of appeal "on the agency," as they did on the Board's counsel, does not mandate dismissal of the appeal under Rule B5. We think this case wholly unlike either *Volk* or *Bounds* where no proper petitions of appeal were ever timely filed; it is closer to *Kines* and *Town of Somerset* and while, because of the differing factual situation, it is not controlled by either of those cases, the substance of compliance with Rule B2 e, as in those cases, is wholly apparent. We, therefore, conclude that appellants' Motion Ne Recipiatur was properly denied.

## II

Appellants contend that the lower court erroneously substituted its judgment for that of the Board by finding the reclassification unreasonable and arbitrary and not supported by substantial evidence.

The Board found that while there had been no mistake in the original zoning, there had been a substantial change in the surrounding neighborhood since the adoption of the zoning map of sufficient weight to justify reclassification of the subject property. The Board's finding was expressly made dependent on "various factors cumulative in nature," which included construction of the National Freeway between Cumberland and LaVale "with its two interchanges [off Vocke and Winchester Roads] all within approximately one mile . . . [of the subject property]"; the widening of Vocke Road (which bordered one side of the subject tract) from a two-lane, sixteen-foot road to a six-lane, fifty-foot divided highway; the widening of Winchester Road (bordering another side of the subject property) from a two-lane road to a four-lane road; a consequent increase in vehicular traffic occasioned by the road construction; commercialization "in the area" which has been in process since the inception of the LaVale Zoning Ordinance; one reclassification for commercial purposes of a property directly across from the subject property (a roller rink); installation of water and sewerage facilities; and the compatibility of the

proposed use of the subject property with the "surrounding area."

The Board concluded in its opinion:

> "While any one of the various elements . . .
> may not be of itself sufficient, yet we find that
> the cumulative effect of all these factors has resulted in a substantial change in the neighborhood of sufficient weight to justify a map
> change."

Other evidence before the Board showed that the Searstown Shopping Center was located on property diagonally across from the intersection of Winchester and Vocke Roads; that the shopping center property extended northerly along Winchester Road almost to the Freeway interchange; that this land had been zoned commercial since the adoption of the zoning map in 1957; and that various commercial establishments existed along Route 40, an area, zoned commercial since 1957, which lay to the north of the Freeway.

In his opinion reversing the Board's decision, Judge Getty noted that to justify a zoning reclassification, the Maryland cases require a showing of three elements, *viz.,*

> "1. What area reasonably constituted the 'neighborhood' of the subject property;
> 2. The changes which have occurred in that neighborhood since the original zoning;
> 3. That these changes resulted in a change in the character of the neighborhood."

Judge Getty concluded that there was no evidence before the Board defining "the neighborhood of the subject property." He also concluded that the evidence before the Board failed "to establish any change in the character of the neighborhood by the one element of change, the construction of the National Freeway and the widening of Vocke Road." Specifically, he stated that the testimony concerning commercial development in the upper LaVale area referred "almost exclusively to intensification of

commercial establishments along Route 40 which has always been zoned commercial and cannot reasonably be considered as constituting the neighborhood of the subject property." He noted that the Searstown Shopping Center property, situated near the subject property, "is in an area . . . that has always been zoned for commercial use." Judge Getty noted the existence of one commercially rezoned establishment across from the subject property (the roller rink); he stated that it had been rezoned several years previously without apparent objection. He held that the only probative evidence of a change in the general area was brought about by the construction of the Freeway with access entrances thereto from both Vocke and Winchester Roads, both of which roads had been widened. He noted that the widening of Winchester Road was done to accommodate traffic into the Searstown Shopping Center and into the Vocke Road entrance. Contrary to the Board's conclusion, Judge Getty said that the record contained no evidence that water and sewerage were not available until after enactment of the zoning ordinance; consequently, he held that the present existence of these lines did not constitute a change in the area.

On the record before us, we agree with the lower court that the "neighborhood" of the subject property was not established in accordance with the requirements of the Maryland cases. We recognized in *Montgomery v. Board of County Commissioners*, 263 Md. 1, 280 A. 2d 901 (1971) that the concept of a neighborhood is a flexible one and will vary according to the geographical location involved, it being axiomatic that in a rural or semi-rural area the "neighborhood" will be larger and more fluid than in a city or suburban area. We held in *Clayman v. Prince George's County*, 266 Md. 409, 292 A. 2d 689 (1972) that while that which reasonably constitutes the neighborhood of the subject property need not be precisely and rigidly defined, it must be shown to comprise an area reasonably within its "immediate environs . . . not some area miles away; and the changes must occur

in that immediate neighborhood of such a nature as to have *affected its character."* 266 Md. at 418, 292 A. 2d at 694. See also *Heller v. Prince George's County,* 264 Md. 410, 412-14, 286 A. 2d 772, 773-74 (1972) ; *Harley v. Aluisi,* 259 Md. 275, 282, 269 A. 2d 575, 579 (1970) ; *Montgomery v. Board of County Commissioners for Prince George's County,* 256 Md. 597, 602, 261 A. 2d 447, 450 (1970) ; *Woodlawn Area Citizens Association, Inc. v. Board of County Commissioners for Prince George's County,* 241 Md. 187, 198-99, 216 A. 2d 149, 156-57 (1966). As the cited cases indicate, that which reasonably constitutes the neighborhood of the subject property is one of the basic facts to be established by an applicant for rezoning, and because of its fundamental involvement in any case resting on a contention of a change in the character of the neighborhood it must be satisfactorily shown upon the record. A record showing, as here, that the subject property was part of the LaVale or upper LaVale area, without some delineation of the general boundaries encompassed thereby, provides a woefully inadequate evidentiary foundation upon which to establish the requisite element of "what reasonably constitutes the neighborhood" within the contemplation of the Maryland cases.

Appellants concede that "there may not have been a specific demarcation of the boundaries of the neighborhood. . . ." But they nevertheless urge that "substantial evidence of change was shown in instances across from the subject property, in the roads bordering it and in such close proximity to it as to necessarily be included in any definition of the applicable neighborhood." [5] It is clear, however, that the Board expressly rested its de-

5. Appellants claimed in their brief that, in addition to commercial rezoning of the roller rink property on Winchester Road immediately across from the subject tract, the property next to it, occupied by the Jolly Roger Liquor Store, was also previously rezoned commercial. Neither the Board nor the court made any such finding. The record indicates that the liquor store property is located next to the LaVale Firehall and not next to the subject property. We were told during oral argument that the liquor store lies 2½ miles from the subject property.

cision granting the reclassification upon the cumulative effect of the factors hereinbefore enumerated which included commercialization of properties along Route 40, lying north of the Freeway—an area zoned commercial for over fifteen years and not in such close proximity to the subject property as necessarily to be accepted as a part of the neighborhood. But even without the inclusion of this area as a part of the surrounding neighborhood, the record made by the appellants before the Board does not contain the strong evidence required of a change in conditions resulting in a substantial change in the character of the neighborhood necessary to rebut the strong presumption of the correctness of the original zoning. See *Heller v. Prince George's County, supra,* 264 Md. at 412, 286 A. 2d at 773. Compare *Beth Tfiloh v. Blum,* 242 Md. 84, 218 A. 2d 29 (1966) ; *Finney v. Halle,* 241 Md. 224, 216 A. 2d 530 (1966) ; *Jobar Corp. v. Rodgers Forge Community Association, Inc.,* 236 Md. 106, 202 A. 2d 612 (1964). We hold, therefore, that Judge Getty did not commit error by concluding that the evidence adduced before the Board was not legally sufficient to justify reclassification of the subject property from Residential A and Rural Residential to Commercial A.

*Judgment affirmed; costs to be paid by appellants.*