# THE OHIO CASUALTY INSURANCE COMPANY *v.*
## INSURANCE COMMISSIONER OF THE
## STATE OF MARYLAND

[No. 1145, September Term, 1977.]

*Decided June 9, 1978.*

The cause was argued before GILBERT, C. J., and MOYLAN and MASON, JJ.

*William M. Nickerson,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Thomas E. Plank, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Carl E. Eastwick, Assistant Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

"Once the decision to appeal has been made, the first, obvious and cardinal duty of the appellate advocate is to read with care and attention the rules of the Court of Appeals." A. Scanlan,[1] *Effective Appellate Advocacy in the Court of Appeals of Maryland,* 29 Md. L. Rev. 126, 127 (1969).[2] The case now before us must fall casualty to appellant's failure to comply with Md. Rules ch. 1100, "Subtitle B. Administrative Agencies — Appeal From."

This appeal arises directly from a complaint filed by Myles Farley, the principal of Stansbury Joppatowne, Inc., trading as Stansbury Photo & Stereo (Stansbury) with the Insurance Commissioner, Maryland Department of Licensing and Regulation (Commissioner) against Ohio Casualty Insurance Company (Ohio). The focal point of the dispute is a disagreement as to which of two (2) endorsements, one providing coverage of up to one thousand dollars ($1,000) and the other setting a monetary ceiling of fifteen thousand dollars ($15,000) applies to Stansbury's claim for recompense for losses incurred in an armed robbery. Ohio would agree to reimburse Stansbury to the extent of the lower limit

---

1. Mr. Scanlan was an Associate Judge of this Court from November 9, 1972 to August 31, 1973.

2. *See* Mr. Scanlan's comments revised and updated specifically for *MICPEL, I The Maryland Appellate Practice Handbook* B-143, B-144 (1977).

coverage only. Stansbury, however, contended that the higher limit endorsement applied to his claim, and, as we have indicated, he filed charges with the Commissioner under Md. Ann. Code art. 48A, § 55 (2) (iv), alleging that Ohio "unreasonably refused or delayed payment to the Complainant of the amount due. . . ."

The Commissioner, pursuant to Md. Ann. Code art. 48A, § 27, convened a hearing on December 11, 1975. Approximately two (2) months later, the Commissioner issued an order in which he found that Ohio was liable under the endorsement that set the higher limits. Ohio was held to be in violation of Md. Ann. Code art. 48A, § 55, as a result of unreasonably refusing or delaying payment to Stansbury. The Commissioner directed Ohio "to . . . pay unto the Complainant [Stansbury] restitution for the loss which occurred on or about April 26, 1975. . . ."

Ohio, on February 26, 1976, filed a notice of appeal in the Baltimore City Court, in accordance with Md. Ann. Code art. 48A, § 40 (1). Although the appeal was timely taken, Ohio overlooked the requirement of Md. Rule B2 e that a *petition* "setting forth the action appealed from, the error committed by the agency in taking such action, and the relief sought . . ." must be filed with the clerk of the court not later than ten (10) days after the filing of the order of appeal.

Within the time allowed for an answer, Md. Rule B9, but well after the ten (10) day period in which to file the petition had expired, the Commissioner moved pursuant to Md. Rule B5 to dismiss Ohio's appeal for non-compliance with Md. Rule B2 e.

On the seventh day following the Commissioner's motion to dismiss, Ohio responded by dual pleadings in the City court. It belatedly complied with Md. Rule B2 e by filing the required "petition" alleging that the Commissioner's findings were not in accord with the factual evidence adduced at the administrative hearing. Ohio also answered the Commissioner's motion to dismiss. In its response, Ohio sought to excuse its failure to obey Md. Rule B2 e by stating that "if found to be in error as to procedure, [it] was misled

by the statutory provision of Art. 48A, § 40, which appears to provide complete separate and distinct procedural guidelines for appeals from Orders of the Insurance Commissioner."

Md. Ann. Code art. 48A, § 40 (1) provides in pertinent part:

"An appeal from the Commissioner shall be taken only from an order on hearing or with respect to a matter as to which the Commissioner has refused a hearing. Any person who was a party to such hearing, or whose pecuniary interests are directly and immediately affected by any such order or refusal and who is aggrieved thereby may, within thirty (30) days after (i) the order has been mailed or delivered to the persons entitled to receive ... [it] appeal from such order. ... The appeal shall be taken to the Baltimore City court, by filing written notice of appeal in such court and by filing a copy of such notice with the Commissioner. ..."

The motion by the Commissioner to dismiss Ohio's appeal from the Commissioner's order was denied by a judge of the Supreme Bench. Subsequently, the matter was heard on its merits before Judge David Ross who affirmed the Commissioner's order. Ohio has now carried its "great bundle of grief" [3] to this Court, where it urges us to banish its sorrow by reversing Judge Ross's order. The Commissioner, either not satisfied with having prevailed in the City court on the merits, or not to be outdone by Ohio, has also appealed. The Commissioner asserts that the hearing court [4] erred in denying the motion to dismiss Ohio's appeal from the Commissioner's order.

We shall consider the counter-appeal first in view of the fact that if the motion to dismiss was improperly denied, the City court lacked jurisdiction to hear the merits and Ohio's appeal, in its present posture, is not properly before us. The hearing judge ruled that Ohio had "complied with [the]

3. From Carl Sandburg (1878-1967), *The People Live On* [1936].

4. As we have previously indicated, Judge Ross decided the case on the merits after another judge had denied the motion to dismiss.

statutory requirements" relative to appeals from the Commissioner, and, accordingly, he denied the motion to dismiss. By so doing, the judge implicitly held that Md. Rules, Ch. 1100, Subtitle B, were not controlling.

Md. Rule B1 a provides that Subtitle B "shall apply to the review of any final action of an administrative agency by a court where such review is specially authorized by statute. . . ." An administrative agency is defined by Md. Rule B1 b to mean, *inter alia,* "any . . . commissioner . . . whose action or decision is specifically subject to court review. . . ."

If Ohio's appeal falls within the ambit of the B rules, it is subject to the clear mandate of Rule B2 e, which states:

> "The appellant shall join with his order for appeal, or shall file with the clerk of the court, within ten days after filing the order, a petition setting forth the action appealed from, the error committed by the agency in taking such action, and the relief sought, and shall serve a copy thereof on the agency."

Failure to comply with Rule B2 e may result in dismissal of the appeal under Rule B5.

> "If the appellant shall fail to file his order for appeal within the time prescribed by Rule B4 (Time for Filing) or any order issued pursuant thereto, or shall fail to file his petition within the time prescribed by section e of Rule B2 (How Appeal Taken), the court *shall dismiss the appeal unless cause to the contrary be shown.*" Md. Rule B5. (Emphasis supplied.)

*See Renehan v. Public Service Comm.* 231 Md. 59, 188 A. 2d 566 (1963); *Aberle v. Mayor & City Council of Baltimore,* 228 Md. 542, 180 A. 2d 836 (1962); *Merrimack Park v. County Board of Appeals,* 228 Md. 184, 179 A. 2d 345 (1962).

Ohio contends that it successfully proved "cause" for not complying with Md. Rule B2 e. "Cause," as used in Md. Rule B5, refers to "good cause." *Merrimack Park v. County Board of Appeals, supra; Madore v. Baltimore County,* 34 Md. App. 340, 367 A. 2d 54 (1976). In *Madore,* this Court quoted

approvingly from *Lee v. Houston Fire & Cas. Ins. Co.,* 530 S.W.2d 294, 296 (Tex. 1975) where it was stated:

> " 'The test for . . . [finding good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances.' " 34 Md. App. at 345, 367 A. 2d at 57.

Ohio maintains that Md. Ann. Code art. 48A, § 40's "procedural mandates are presented in such language and detail as to lead to the conclusion that the following of the procedural requirements set down by the statute is altogether sufficient to perfect an appeal to the Baltimore City Court. The reason why a petition for appeal was not joined to the order of appeal . . . is that counsel for Ohio believed that the procedures outlined in Art. 48A, Sec. 40 were complete and accomplished what they purport to accomplish on their face, *i.e.,* how to take an appeal."

Ohio relies heavily upon the wording of what it terms a "particularly descriptive . . . subtitle: '(1) Decisions Appealable; how, and by whom appeal taken. . . .' " What Ohio ignores is that the "particularly descriptive . . . subtitle" is not part of the law as enacted. *See* 1976 Md. Laws Ch. 472, § 11; 1975 Md. Laws Ch. 221, § 1; 1974 Md. Laws Ch. 748; 1966 Md. Laws Ch. 412; 1963 Md. Laws Ch. 553; 1962 Md. Laws Ch. 36, § 32; 1945 Md. Laws Ch. 564, § 1. The "subtitle" quoted by Ohio is but the Editor's catchwords to indicate the content of the section and "unless expressly provided," it is *not* part of the law. Md. Ann. Code art. 1, § 18 declares:

> "The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the sections and subsections. They are not to be deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless

> expressly so provided, they shall not be so deemed
> or taken when any of such sections and subsections,
> including the captions or headlines, are amended or
> reenacted."

*See Montgomery County v. Eli,* 20 Md. App. 269, 315 A. 2d
136 (1974).

That Ohio was misled, as it avers, by the "particularly
descriptive ... subtitle" is no excuse. The law is crystalline
that section titles and subtitles are not part of the section or
subsection unless expressly stated to be a part thereof. Md.
Ann. Code art. 1, § 18. Thus, Ohio's reliance upon the
descriptive subtitle is completely misplaced. Comparison of
Md. Ann. Code art. 48A, § 40, and the B rules reveals that
the provisions not only do not conflict, but are, in fact,
harmonious. Absent section 40's authorization of appeal, the
B rules would not apply because Md. Rule B1 a mandates that
an appeal be "specifically authorized" by statute.[5]
*Maryland-National Capital Park and Planning v. City of
Rockville,* 269 Md. 240, 305 A. 2d 122 (1973).

Ohio emphasizes a 1973 determination by the Attorney
General that section 40 "provides procedural safeguards
against unreasonable, arbitrary or capricious exercise of
power by the Commissioner." 58 Attorney General's Opinions
92, 99 (1973). We agree that is precisely what section 40 in
fact does. It authorizes an avenue of appeal. Section 40,
however, is not autonomous and must be read in conjunction
with Md. Rules B1 to B12. *See County Federal Savings and
Loan Assoc. v. Equitable Savings and Loan Assoc., Inc.,* 261
Md. 246, 274 A. 2d 363 (1971).

Ohio further points out that the Rules Committee set forth
a cross-reference annotation, following Md. Rule B1 a, listing
certain statutes subject to the dictates of Md. Rules B1 to

---

5. Decisions of administrative agencies are not irreviewable, and the
courts have the inherent power to review such decisions on common law or
constitutional grounds, even absent statutory provision, if the action taken
by the agency is "shown to be arbitrary, illegal or capricious, and to impair
personal or property rights. . . ." Heaps v. Cobb, 185 Md. 372, 379, 45 A. 2d
73, 76 (1945). *See also* Hoffman v. Mayor and City Council of Baltimore, 187
Md. 593, 51 A. 2d 269 (1947); Hecht v. Crook, 184 Md. 271, 40 A. 2d 673 (1945);
Dal Maso v. Board of County Comm'rs of Prince George's County, 182 Md.
200, 34 A. 2d 464 (1943).

B12. Md. Ann. Code art. 48A, § 40 is conspicuously absent therefrom. The Committee note makes clear, however, there exists a "substantial volume of statutory provisions dealing with the procedural aspects of appeals from State and local administrative agencies to the nisi prius courts. The Code of Public General Laws was examined page by page in an effort to discover all of these statutory provisions." The Committee's note makes manifest that while an effort was made to record as many applicable sections of the Code as possible, the "cross-reference" is by no means all-inclusive. The note acknowledges possible errors or omissions in compiling the affected provisions. The mere absence of Md. Ann. Code art. 48A, § 40 is no indication that it is exempt from the requirements of Rules B1 to B12.[6]

Ohio's argument that "[w]hether this court agrees or disagrees that Md. Ann. Code Article 48A, § 40 purports to provide the appeals procedure from the Insurance Commissioner, is not, necessarily, dispositive of this case," is only accurate if "good cause" for nonadherence to Md. Rule B2 e is shown. Md. Rule B5. In our view, Ohio's mistaken

---

6. We set forth below, with corrections, the "list" prepared by the Rules Committee wherein Code provisions authorize appeals to the courts from other administrative agencies: Art. 1A, §§ 5-502, 8-801 to 8-803 (Aviation); Art. 2B, §§ 42, 175, 176 (Alcoholic beverages); Art. 11, §§ 40 (f), 175, 184 (Banks & Trust Companies); Art. 25, §§ 46-48, 67, 199 (County Commissioners); Art. 25A, § 5 (U) (Chartered Counties of Maryland-County Board of Appeals); Art. 32, § 13 (Dentistry); Art. 33, §§ 3-21, 17-7, 19-2 (Election Code-Supervisor of Election); Art. 43, §§ 130, 169, 193 (f), 207, 222, 268 (d), 269, 277, 280, 325, 355, 480 (g), 490 (h), 553, 563, 574, 636 (e) (Health); Art. 48A, §§ 40, 215, 216, 245 (2) (Insurance Code); Art. 56, §§ 72, 91, 95, 98, 142, 204 (e) (2), 207, 225 (c) (Licenses); Art. 58A, § 7 (Loans-Consumer-Administrator of Loans); Art. 59, §§ 35, 54A (Mental Hygiene); Art. 66½, §§ 6-211, 6-408 (Vehicle Laws); Art. 66A, § 19 (Moving Pictures-Motion Picture Board of Censors); Art. 66B, §§ 2.09, *4.08,* 6.03 (Zoning and Planning) (significantly, § 4.08 is the *only provision* that refers to the "B Rules" of Procedure); Art. 73B, § 39 (e) (Pensions); Art. 75½, § 17 (g) (Professional Engineers and Land Surveyors); Art. 77, §§ 12 (b), 149 (Public Education); Art. 78, §§ 42, 89-98 (Public Service Commission Law); Art. 78B, § 10 (Racing Commission); Art. 83, § 160 (Sales and Notices); Art. 85A, § 14 (Sedition and Subversive Activities-Commissioner of Personnel); Art. 88A, § 26 (State Department of Social Services-Child Care Institution Licensing); Art. 89, § 38 (Department of Labor and Industry); Art. 95A, §§ 7 (h), 15 (c) (Unemployment Insurance Law); Md. Agric. Code Ann. §§ 2-311, 3-107, 7-209 (e) (1974); Md. Corp. & Ass'ns Code Ann. § 11-704 (1975); Md. Nat. Res. Code Ann. §§ 1-107, 6-111, 7-307 (1974). This may not be complete. The careful practitioner will refer to the statute controlling the agency from which he desires to note an appeal; he will read the statute along with the B Rules of Procedure.

belief that Article 48A, § 40 established procedures independent of the Maryland Rules of Procedure is not good cause. Ignorance of the law [7] cannot serve as an excuse for failure to file a petition of appeal. A reason or explanation of why a particular event occurred is not necessarily an acceptable excuse for the happening. That a lawyer was misled by the caption to a statute explains why he erred, but does not excuse the error any more than the captain who drives his ship upon the shoals is excused because he misread the chart.

Rule B5 mandates dismissal of an appeal where the appellant "shall fail to file" either the order or petition of appeal "within the time prescribed" by the Rules, "unless cause to the contrary be shown." "Cause," we have already seen, means "good cause." *Merrimack Park v. County Board of Appeals, supra.* The cases relied on by Ohio to support its failure to file are inapposite to the case *sub judice.* In *Merrimack Park v. County Board of Appeals, supra,* good cause was found excusing appellant's omission of a petition of appeal because the appellant was informed by the Board's counsel that the Board would not require a petition so long as it was filed a few days before the date of hearing. The Court held that the action of the Board's counsel constituted cause within the meaning of the rule in that the Board's counsel "lulled" appellant into the position where its appeal was dismissed. *Merrimack* differs markedly from Ohio's situation.

We do not quarrel with the proposition that:

> "[W]here there has been compliance with the substance of the requirements of statutes or rules by one party and the other party has not been prejudiced, technical irregularities cannot be made the basis for depriving persons of an opportunity to assert their legal rights. ..." *McLay v. Maryland Assemblies, Inc.,* 269 Md. 465, 476-77, 306 A. 2d 524, 530 (1973) (Citations omitted.)

---

7. "Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and no man can tell how to confute him." John Seldon, *The Table Talk of John Seldon* (edited by Samuel Harney Reynolds 1892) p. 99.

The above rule has served to save appeals from dismissal in cases such as *Border v. Grooms,* 267 Md. 100, 297 A. 2d 81 (1972), where a good faith attempt to comply with Md. Rule B2 e was made. In *Grooms,* a petition of appeal was served on counsel for the Zoning Board instead of on the Board itself. Because the Zoning Board's attorney was found to be acting on the Board's behalf, the purpose of Md. Rule B2 e was deemed to be satisfied. *See Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966), in which a motion to dismiss was denied where a petition was timely filed but failed to allege that appellants were the persons aggrieved. *See also Board of County Comm'rs v. Kines,* 239 Md. 119, 210 A. 2d 367 (1965); *Irvine v. Montgomery County,* 239 Md. 113, 210 A. 2d 359 (1965).

Chief Judge Murphy was careful in *Grooms* to distinguish those cases in which *no* proper petition of appeal was ever timely filed. The Court, in *Volk v. Pugatch,* 262 Md. 80, 277 A. 2d 17 (1971), upheld the granting of a motion to dismiss where appellant neglected to file a petition of appeal or to transmit the record and testimony in accordance with Md. Rules B2 e and B7 a. Similarly, in *Salisbury Board of Zoning Appeals v. Bounds,* 240 Md. 547, 214 A. 2d 810 (1965), the Court reversed the trial court's denial of a motion to dismiss where a petition of appeal was not filed until thirty (30) days past the deadline prescribed for such filing by Md. Rule B2 e. An appeal was also dismissed in *Warmack v. Bradley Club, Inc.,* 242 Md. 394, 219 A. 2d 12 (1966). There, the Court said that appellee's shopping for counsel did not justify a ten (10) day delay in filing.

The fact that the Commissioner, in the instant case, suffered no prejudice as a result of the delay is irrelevant. Rule B5 does not require a showing of prejudice to the adverse party as a prerequisite of the trial court's dismissing a late appeal. *Border v. Grooms, supra; Volk v. Pugatch, supra; Warmack v. Bradley Club, Inc., supra; Salisbury Board of Zoning Appeals v. Bounds, supra.*

Md. Rule B2 e and Md. Ann. Code art. 48A, § 40 are to each other as flour is to bread. Without using flour you cannot

make bread; without using the B Rules you cannot perfect an appeal from an administrative agency.

The trial court is vested with far less discretion in applying Rule B5 than Ohio suggests. The rule plainly states that the trial court, in the absence of cause to the contrary, *"shall"* dismiss the appeal for non-compliance with Md. Rule B2 e. The use of the word "shall" indicates that very little elasticity is allowed. Nevertheless, Ohio asks us to read the rule as discretionary rather than as a command. The appellate courts of this State have consistently refused to construe the rule in such a fashion. *Cf. Jacober v. High Hill Realty, Inc.,* 22 Md. App. 115, 321 A. 2d 838 (1974), *cert. denied,* 272 Md. 743 (1974), failure to file timely under Rule B7; *Goldman v. Tauber,* 258 Md. 174, 176, 265 A. 2d 225, 226 (1970), failure to file timely under Md. Rule 825 b. *But see Toomey v. Gomeringer,* 235 Md. 456, 201 A. 2d 842 (1964), which alluded to a certain degree of flexibility inherent in Md. Rule B2 e. *Toomey,* however, has not been followed in later cases.

The courts have very little leverage in permitting untimely appeals. The most persuasive appeal, "if filed late, may prove to be an expensive and professionally embarrassing exercise in futility. . . . Thus, if . . . [the petition] for appeal is not filed within the allotted time, the appeal must be dismissed, since courts lack the power or discretion to allow an appeal which is not filed within the prescribed time." A. Scanlan, *Effective Appellate Advocacy in the Court of Appeals of Maryland,* 29 Md. L. Rev. 126, 127-28 (1969).

We think that Ohio's attempted appeal from the Insurance Commissioner should have been dismissed by the hearing judge. Contrary to the hearing judge's view, Ohio did not comply "with statutory requirements." It was not properly in court, and the case should not have been permitted to go forward on its merits as the court, by Ohio's mistake, had been ousted of jurisdiction.

For whatever solace it may be to Ohio, if the trial court had jurisdiction, and if the case were properly before us on its merits, we could not find that Judge Ross erred in affirming the Commissioner's decision.

Under Md. Ann. Code art. 48A, §§ 55 (2) (iv) and 55A, the Commissioner may require that restitution be paid to a claimant where an insurer "unreasonably refuses or delays payment to claimants of the amount due them." Implicitly, Judge Ross found that Ohio had, in fact, "unreasonably ... [refused] payment to Stansbury."

The fact finding by Judge Ross is subject to the clearly erroneous test. Md. Rule 1086. The facts are susceptible of two (2) different findings, *i.e.,* Myles Farley, the owner of Stansbury, was acting at the time of the loss as a watchman for his wholly-owned corporation or that he was not. If Farley was found to be acting as a watchman, the higher policy limits apply. If he was acting in another capacity, the lower limits were applicable. In either event, we are not at liberty to substitute our judgment thereon for that of the trial judge, Md. Rule 1086, nor are we prepared to declare, in the face of those two (2) possible distinct findings that as a matter of law the lesser limitations of the policy are applicable.

> *Appeal is dismissed and case remanded to the Baltimore City Court with instructions to dismiss the appeal from the Insurance Commissioner.*
>
> *Costs to be paid by appellant.*